UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ERIC GREENBERG, M.D.** | * | **CIVIL NO. 19-137** |
| | * | |
| | * | |
| | * | **JUDGE: LMA** |
| **VERSUS** | * | |
| | * | **MAGISTRATE: JCW, JR** |
| **BOARD OF SUPERVISORS** | * | |
| **OF LOUISIANA STATE UNIVERSITY** | * | **SECTION "I"(2)** |
| **AND AGRICULTURAL AND** | * | |
| **MECHANICAL COLLEGE,** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Defendant, THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ("LSU Board"), respectfully submits the following Memorandum in Support of its Motion for Partial Summary Judgment to dismiss Plaintiff's claims brought pursuant to the Americans with Disabilities Act of 1990, as amended 42 USC §12111 (hereafter "the ADA") as well as Plaintiff's hostile work environment claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*, (hereafter "Title VII") against the LSU BOARD with prejudice.[1]

**<u>FACTUAL BACKGROUND</u>**

Plaintiff, Eric Greenberg, began his employment as a resident with LSU Health Sciences

---

[1] The minute entry from the pre-motion conference dated October 1st, 2019 notes that the religious discrimination count and sexual harassment counts are dismissed. Therefore they are not addressed in this motion. Oct. 1 Minute Entry- Exhibit A, p2.

Center New Orleans (hereafter "LSUHSC-NO"), a subsidiary of the LSU Board, in July 2013.[2] In his complaint, Plaintiff alleges that during his time as a resident he was subjected to a various types of harassment and discrimination during his tenure at LSUHSC-NO.[3] Relevant for purposes of this motion, Plaintiff alleges that the LSU Board commenced "a campaign of harassment and discrimination" on the basis of the Plaintiff's attention deficit hyperactivity disorder (hereafter "ADHD").[4] Specifically, Plaintiff alleges that the defendant treated Plaintiff differently from similarly-situated employees who were not disabled, failed to accommodate Plaintiff's ADHD, and made disparaging remarks about the Plaintiff.[5]

In addition to the ADA claims, Plaintiff claims he faced anti-Semitic discrimination in violation of Title VII. Specifically, he claims that the LSU Board subjected him to "unwelcome hostile commentary and intimidation on the basis of his religion had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment for Plaintiff."[6] Plaintiff states the LSU board made "repeated derogatory and discriminatory comments about Jewish people, the Jewish religion, circumcision, and Jewish dietary restrictions" during his employment at LSUHSC-NO.[7] Despite the supposed regularity of these comments Dr. Micelle Haydel (a doctor that wrote letters of recommendation[8] for Plaintiff at Plaintiff's request) states that she never saw the man who allegedly spearheaded the discrimination ever exhibit any type of prejudice.[9]

---

[2] First Amended Complaint Exhibit B, p2.
[3] First Amended Complaint Exhibit B, p2-4.
[4] First Amended Complaint Exhibit B, p3.
[5] First Amended Complaint Exhibit B, p3.
[6] First Amended Complaint Exhibit B, p7.
[7] First Amended Complaint Exhibit B, p3.
[8] *See e.g.,* Haydel Latter of Recommendation Exhibit C, p1.
[9] Haydel Depo. 53:10-14 Exhibit D.

Plaintiff reported the allegedly discriminatory conduct to defendant and alleges that the defendant retaliated against the Plaintiff, ultimately terminating the Plaintiff from LSUHSC-NO's emergency medicine residency program, due to discrimination under the auspices of Title VII and because of discrimination predicated on Plaintiff's ADHD.[10] Plaintiff traces lost wages, loss of earning capacity, loss of fringe benefits, and distress, and humiliation to the LSU Board's conduct.[11]

Conversely, the LSU Board asserts that Plaintiff was discharged for legitimate reasons and not for either discriminatory or retaliatory reasons. As articulated in the March 14th, 2017 termination email, Greenberg was terminated because he failed to meet the list of goals and performance expectations mandated by the Accreditation Council for Graduate Medical Education ("ACGME"). Specifically, the LSU Emergency Medicine Residency's Clinical Competency Committee determined that, "following innumerable attempts at remediation and conversations with residency leadership" and a placement on academic probation[12] Greenberg's "**Patient Care, Professionalism, System-Based Practice and Interpersonal & Communication Skills** competencies [were] not at a level acceptable to any health care provider to safely care for patients or practice emergency medicine".[13] The termination email goes on to list incidents amounting to thirty-one ACGME violations.[14] These include an incident where he gave a patient a different dose of ketamine in defiance of his supervisor's instruction of a lower dose,[15] an incident where he selected "the wrong antibiotic [for] an infected febrile ortho patient,"[16] and an incident where he

---

[10] First Amended Complaint Exhibit B, p4.
[11] First Amended Complaint Exhibit B, p6.
[12] Request for adverse action – Termination 001269. Exhibit E
[13] Request for adverse action – Termination 001265 (emphasis in original). Exhibit E
[14] Request for adverse action – Termination 001265-68. Exhibit E
[15] Request for adverse action – Termination 001266. Exhibit E
[16] Request for adverse action – Termination 001267. Exhibit E

placed a central line "without any form of analgesia on a mentally challenged patient."[17] These patient care concerns are not arbitrary, as each correlates to a breach of a specific patient care ("PC") guideline. For example, the termination letter notes that the ketamine incident was in violation of the PC5 "Pharmacotherapy" guideline and the central line placement violated the PC11 guideline for "Anesthesia and Acute Pain Management".[18]

## LAW AND ARGUMENT

Summary Judgment under Federal Rule of Civil Procedure 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-323 (1986); Fed. R. Civ. Pro. 56(c). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issue of material fact. Then, if the moving party meets the initial burden of establishing that there is no genuine issue, the burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.

The non-movant must demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manuf. Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), *cert denied*, 521 U.S. 1112 (1997). The non-movant may not rest on its allegations and denials. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Nor can the non-movant satisfy its burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Levy v. Phillips & Jordan*, *Inc*, No.

---

[17] Request for adverse action – Termination 001266. Exhibit E
[18] Request for adverse action – Termination 001266. Exhibit E

CIV.A. 08-5065, 2011 WL 2580592, at *2 (E.D. La. June 29, 2011) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Moreover, Rule 56(c) mandates the entry of summary judgment against a party who has failed to make an evidentiary showing sufficient to establish an essential element of his case. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

I.  **ERIC GREENBERG'S DISCRIMINATION CLAIMS BROUGHT UNDER TITLE I OF THE ADA ARE ABROGATED BY SOVEREIGN IMMUNITY.[19]**

The Eleventh Amendment of the United States Constitution prohibits citizens of a state from suing a state in federal court "unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The State of Louisiana specifically asserts its sovereign immunity via statute. *Mire v. Bd. of Supervisors of Louisiana State Univ.*, No. CV 15-6965, 2016 WL 4761561, at *3 (E.D. La. Sept. 13, 2016) (citing La. Stat. Ann. § 13:5106 (2018). This immunity extends to agencies of the state such as the LSU Board because "[i]t is well-settled in the Fifth Circuit that institutions of higher education and their boards are arms of the state entitled to immunity" *Hall v. Bd. of Supervisors of Cmty. & Tech. Colleges*, No. CIV.A. 15-67, 2015 WL 2383744, at *4 (E.D. La. May 18, 2015); *see also Raj*, 714 F.3d at 328 ("[T]he LSU Board is an arm of the state and is immune from suit under the Eleventh Amendment.").

---

[19] Defendant brings this motion following the court ordered status conference of October 1st, 2019. During that conference, the parties and court discussed this motion. Concerning the portion of the motion addressing the ADA claims, it is undersigned counsel's recall that Plaintiff's counsel indicated that Plaintiff's ADA claims fell only under Title 1. After further discussion about the case law addressing Title 1 claims and sovereign immunity, the court directed counsel to exchange case law on the subject. By letter dated October 1, 2019 counsel provided a summary of case law supporting defendant's position that Plaintiff's Title 1 claims are barred by sovereign immunity. (See Exhibit F**).** Undersigned counsel has received no response to the letter and proceeds with the filing of this motion given the deadlines established by the court.

Although Congress attempted to totally abrogate state sovereign immunity for all ADA claims, the Supreme Court of the United States specifically held that this attempt exceeded Congressional authority in respect to Title I claims. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). Therefore, because the Congressional abrogation of state sovereign immunity for Title I claims was invalid, Plaintiff's claims against the LSU Board of Supervisors will be barred by the Eleventh Amendment. *Mire,* No. CV 15-6965, 2016 WL 4761561, at *3 (holding that a Plaintiff's Title I claims brought for her termination from an LSUHSC residency program were barred by sovereign immunity).

In his complaint Plaintiff alleges discrimination, and eventual retaliatory termination from his residency position, on the basis of his ADHD.[20] However, Plaintiff's complaint fails to specify which type of claim he is bringing.[21] Instead of specifically differentiating a title in his amended complaint, Plaintiff merely cites "42 U.S.C.A. § 12111, *et seq.*"[22] This citation, 42 U.S.C.A. § 12111, is to the definitions section of Title I of the ADA. In the pre-motion status conference referenced in footnote Plaintiff's counsel assured the court and the LSU Board that Plaintiff roots his ADA complaint in Title I of the ADA in lieu of Title II. Out of an abundance of caution and should the Plaintiff choose to withdraw that assurance, the LSU Board submits that Plaintiff's claims are nevertheless barred by sovereign immunity even if the claims are categorized as Title II claims.

Unlike with Title I claims, the Supreme Court has held that Title II generally abrogates state sovereign immunity as long as the offending conduct violates the United States Constitution. In *United States v. Georgia* the Supreme Court articulated a three-part test to

---

[20] First Amended Complaint Exhibit B, p5-6, 8.
[21] *See* First Amended Complaint Exhibit B, p1.
[22] First Amended Complaint Exhibit B, p1.

determine whether the abrogation of sovereign immunity is proper in a Title II case; in executing this test a court must assess "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 546 U.S. 151, 159 (2006). Here, the Plaintiff's alleged Title II violations did not violate the Fourteenth Amendment because disabled persons are not a suspect class for Equal Protection Clause purposes and LSU's choice to terminate the Plaintiff bore a rational relationship to a legitimate government purpose. *See Pegues v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll., LSU Sch. of Dentistry & Faculty Dental Practice*, No. CV 18-2407, 2019 WL 1544366, at *9 (E.D. La. Apr. 9, 2019). Moreover, the alleged Title II violations do not run afoul of the Fourteenth amendment because "the Supreme Court has never before recognized access to public education or freedom from disability discrimination in education to be fundamental rights." *Id.* (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005)).

> II. **PLAINTIFF FAILED TO STATE A PRIMA FACIE CASE FOR A TITILE VII HOSTILE WORK ENVIRONMENT ON THE BASIS OF RELIGION BECAUSE HE DID NOT SHOW THAT THE ALLEGED CONDUCT WAS SUFFICENTLY SEVERE OR PERVASIVE TO WARRANT ACITONABILITY**

Courts examine hostile-work-environment claims under a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating[;] and whether it unreasonably interferes with an employee's work performance." *Carter v. Burlington N. Santa Fe LLC*, No. 4:15-CV-366-O, 2015 WL 11022766, at *7 (N.D. Tex. Oct. 9, 2015) (citing *Turner v. Baylor Richardsn Med. Ctr.*, 476 F.3d 337, 347

(5th Cir. 2007)) (quotation and alterations omitted). In gauging whether a work environment is hostile "**all circumstances must be considered, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance**." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993)) (internal citations omitted) (emphasis added).

Put succinctly, to be actionable a defendant's conduct must be adequately "severe or pervasive to alter the conditions of the victim's employment". *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) True, "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation. *Turner*, 476 F.3d at 347–48 (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995)). However, "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. *Id.* (citing *Hockman v. Westward Communications,* LLC, 407 F.3d 317, 328 (5th Cir.2004)).

An employer's conduct must be adequately severe or pervasive to be actionable under Title VII.  Assuming for purposes of argument that Plaintiff's allegations are true, here the alleged conduct meets neither criterion. The alleged conduct falls short of the "severe" threshold under Title VII.  Despite alleging a campaign of harassment in the form of a hostile work environment, Greenberg can only name five incidents where he alleges that he faced anti-Semitic discrimination in the workplace.  None of which are sufficiently severe.  First, he alleges that during the interview process an interviewer joked that he "should be over at Jewlane" since he is

Jewish.[23] Second, he alleges that a supervisor texted him "Ur lucky it's a High Holiday" in reference to a Jewish high holiday when he skipped a conference.[24] Third, he alleges that a non-jewish supervisor joked "Hey, I'm Jewish too. My dick is cut."[25] Fourth, he alleges that the same supervisor later repeated the same "dick is cut" joke.[26] Fifth, and finally, he alleges that he was told by a supervisor that he should go to a Jewish program director and tell him his complaints because "[a]ccusations of ansitemmitism won't go far here at LSU."[27] In isolation, no conduct cited by Greenberg is severe enough to alter the conditions of employment.

For a single incident has to be rather extreme in order to be "severe" for hostile work environment purposes. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir.2001) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct."). For example, a single incident where an employee allegedly rubbed his pelvic region across a plaintiff's buttocks and hips for a minute and a half is not severe enough to interfere with an employee's work performance. *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 828-29 (5th Cir. 2009) (holding the alleged physical contact alone was not "extremely serious" and does not change the terms of employment unless pervasive or frequent); *see also Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir.2004) (holding that the acts of grabbing plaintiff's breast, grabbing plaintiff's buttock, and slapping plaintiff's buttock with a newspaper was not sufficiently severe); *see also Derouen v. Carquest*

---

[23] The LSU Board categorically and emphatically denies all hostile work environment allegations. The LSU Board cites these incidents *arguendo* to demonstrate that the alleged conduct is not sufficiently pervasive or severe to be actionable. Additionally, even if this alleged "Jewlane" comment was made it should be excluded from consideration because it was allegedly made during the interview process before Greenberg was even employed under the LSU Board. Eric Greenberg Depo. 46:20 – 47:7. Exhibit G
[24] Greenberg's Timeline of Events Exhibit H, p1.
[25] Greenberg's Timeline of Events Exhibit H, p5.
[26] Greenberg's Timeline of Events Exhibit H, p6.
[27] Greenberg's Timeline of Events Exhibit H, p12.

*Auto Parts*, 275 F.3d 42 (5th Cir. 2001) (plaintiff's "claims that a co-worker attempted to grab her breast and later put his hand on and rubbed her thigh" not amply severe to support a hostile work environment claim).[28] If a minute and a half long incident of unwanted pelvis-to-buttock physical contact does not meet the definition of "extremely serious" conduct ample to change the terms and conditions of employment then no Greenberg identified single incident meets this threshold.  *See Paul*, 309 F. App'x at 828-29.

Aside from a single severe incident, "[f]requent incidents of harassment, though not severe, can reach the level of pervasive, thereby altering the terms, conditions, or privileges of employment." *Lauderdale*, 512 F.3d at 163.  For instance, regular fondling of the breasts and buttock paired with unwanted kissing over the course of seven months amounts to conduct that changes the terms of employment while isolated incidents of teasing and boorish comments do not. *Compare Harvill v. Westward Commc'ns, L.L.C*., 433 F.3d 428, 435-36 (5th Cir. 2005) *with Faragher*, 524 U.S. at 788; *see also E.E.O.C. v. WC&M Enterprises, Inc*., 496 F.3d at 400 (holding plaintiff presented sufficient evidence to create an issue of fact that plaintiff suffered pervasive harassment on the basis of religion when an Islamic man was "**constantly called 'Taliban' and referred to as an 'Arab'** by [defendant]" and was sporadically told that he was a "Muslim Extremist".) (emphasis added); *see also Hussain v. Highgate Hotels, Inc*., 126 F. App'x 256, 268 (6th Cir. 2005) Islamic plaintiff who was called "Taliban" **on a "near daily basis"** sufficiently raised a material issue of fact under a state hostile work environment statue) (emphasis added); *see also Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.

---

[28] Although this case no longer has a Title VII sexual harassment component,  "[a]n action for sexual harassment in violation of Title VII requires the Plaintiff to demonstrate that the harassment created a hostile or abusive working environment." *Paul,* 309 F. App'x at 827 (citing *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir.2005) (internal quotations omitted). The same standard for hostile work environment claims based on sexual harassment applies to hostile work environment claims based on religion. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).

1996) (conduct sufficiently pervasive to support a finding of actionability when the plaintiff was subject to sexually offensive comments "**two or three times a week.**") (emphasis added).

Here, Plaintiff is only able to allege a small number of specific incidents where he supposedly faced a hostile work environment on the basis of his religion. As opposed to the Plaintiff's in *WC&M Enterprises, Hussain,* and *Farpella-Crosby*, Greenberg has failed to show that the alleged anti-Semitic conduct occurred constantly, on a near daily basis, or occurred two to three times a week.

Additionally, even if the conduct was sufficiently severe or pervasive, Plaintiff has yet to offer sufficient specific proof of the conduct. In his complaint Plaintiff makes the blanket assertion that the LSU Board "commenced a campaign of harassment and discrimination on the basis of Plaintiff's religion, which included, but was not limited to, making repeated derogatory and discriminatory comments about Jewish people, the Jewish religion, circumcision, and Jewish dietary restrictions."[29] However, Plaintiff offers nothing substantive to back these claims or the regularity thereof.  To prevail at summary judgment the non-movant may not rest on its allegations and denials. *See Donaghey*, 974 F.2d at 649.  Nor can the non-movant satisfy its burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Levy,* No. CIV.A. 08-5065, 2011 WL 2580592, at *2 (citing *Little v. Liquid Air Corp.*, 37 F.3d at 1075.

When a plaintiff provides "specific evidence" of routine discrimination – like that an employer regularly made racist remarks- then a fact is raised to prevent summary judgment. *See Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000).  A plaintiff provides specific evidence of routine discrimination when, for example, he shows that an employee not party to the suit

---

[29] First Amended Complaint Exhibit B, p3.

resigned because the employee could no longer tolerate the racism and discrimination launched by the employer. *See id.* Here, Plaintiff provides no specific evidence of regular discrimination sufficiently pervasive to alter the terms of employment. Instead, he relies solely on his verbal account of events. The only allegation with any form of evidentiary support is the "Ur lucky it's a High Holiday" text message which, even if intended as a jab, is neither severe nor pervasive enough to be actionable. Therefore, Greenberg has failed to demonstrate that the alleged conduct was a regular occurrence. Moreover, there is no evidence that the alleged comments constitute conduct so extreme or severe as to change the terms and conditions of employment. *See Faragher*, 524 U.S. 775 at 788.

## CONCLUSION

Plaintiff's ADA claims are abrogated by sovereign immunity. La. Stat. Ann. § 13:5106. To the extent that the claim is allowed to morph into a Title II claim, it fails to meet the three-prong test iterated by the Supreme Court of the United States in *U.S. v. Georgia* 546 U.S. at 159. Also, Plaintiff's hostile work environment claims brought pursuant to Title VII of the Civil Rights Act of 1964 warrant dismissal because Plaintiff failed to demonstrate that the alleged conduct was sufficiently severe or pervasive to be actionable.

Therefore the LSU Board respectfully requests that Plaintiff's claims brought pursuant to the ADA in addition to Plaintiff's hostile work environment claim be dismissed with prejudice.

Respectfully submitted,

**JEFF LANDRY**
ATTORNEY GENERAL

*/s/ Julianne T. Echols*
**KEITH W. MCDANIEL, T.A.** (Bar No. 17992)
**JULIANNE T. ECHOLS** ( Bar No. 22044)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDANIEL, & WELCH, LLC
195 Greenbriar Boulevard, Suite 200
Covington, LA   70433
Telephone:     (504) 831-0946
Facsimile:     (800) 977-8810
kwm@mcsalaw.com
jte@mcsalaw.com
*Attorneys for The Board of Supervisors of Louisiana State University Agricultural and Mechanical College*

### CERTIFICATE OF SERVICE

I, hereby certify that on this 8th day of October, 2019 a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice if this file will be sent to all counsel by operation of the court's electronic filing system.

*/s/ Julianne T. Echols*
**JULIANNE T. ECHOLS**