## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC GREENBERG, M.D.** | **CIVIL NO. 19-137** |
| **VERSUS** | **JUDGE: LMA** |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE** | **MAGISTRATE: JCW, JR** |
| | **SECTION "I"(2)** |

## DEFENDANT THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE DR. STAN V. SMITH'S TESTIMONY AND SECOND REPORT ON PLAINTIFF'S ALLEGED ECONOMIC DAMAGES AND WAGE LOSS

**NOW INTO COURT,** through undersigned counsel, comes Defendant, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, (hereafter the "LSU Board"), who respectfully submits this Memorandum in support of its *Motion in Limine to Exclude Dr. Stan V. Smith's Testimony and Second Report on Plaintiff's Alleged Economic Damages and Wage Loss*.

## I.   FACTS

The Court issued a scheduling order in this matter on May 5, 2019.[1]  Pursuant to the scheduling order, the Court set the deadline for Plaintiff to submit his expert reports no later than August 9, 2019.[2]  By way of email, the parties subsequently agreed to provide each other with a

---

[1] Rec. Doc 25
[2] Rec. Doc 25 p2.

two-week extention for the provision of expert reports. Plaintiff then submitted the initial expert report of economist Dr. Stan V. Smith, dated August 15, 2019.[3] In this initial report, Dr. Smith claculated Dr. Greenberg's projected earnings by devising two projected earnings scenarios. The two scenarios were based on wage figures he extrapolated from two sample employment agreements  allegedly originating from two separate Texas hosptitals.[4]

On October 8, 2019, Defendant filed a Motion in Limine to exclude the testimony of Stan V. Smith, taking issue with - among other things - Dr. Smith's reliance on the sample contracts.[5] On November 26th, 2019, this Court issued its Order with respect to the exclusion of Stan V. Smith's testimony.[6] This Court took issue with the validity of the sample contracts, noting "neither Dr. Smith nor Greenberg has established whether the terms of these agreements are representative of the wages that an emergency medicine physician would receive and whether they would depend on board certification."[7] Having taken the sample contracts into consideration, this Court concluded "[b]ecause Greenberg has not yet established whether these two agreements constitute actual employment offers that he received, Dr. Smith may not be able to testify as to Greenberg's projected earnings based on the compensation rates set forth in these agreements"[8], and the Court furthur ordered that "absent the establishment of a proper evidentiary foundation at trial, Dr. Smith may not testify as to Greenberg's net loss of wages."[9]

Presumably in a last minute attempt to salvage the applicability of Dr. Smith's testimony, Dr. Smith then drafted a second report. This second report was not provided to Defendant within two weeks of this Court's August 9, 2019 deadline, or even within two weeks of this Court's

---

[3] Exhibit A: Smith Economics Group, Ltd. Report: Aug.15, 2019.
[4] Exhibit A: Smith Economics Group, Ltd. Report: Aug.15, 2019 p4.
[5] Rec. Doc 52 p9.
[6] Rec. Doc. 100.
[7] Rec. Doc. 100 p25.
[8] Rec. Doc. 100 p26.
[9] Rec. Doc. 100 p29.

November 26th order.  Instead, on March 4, 2020, roughly **seven months after the Court's cutoff date** to submit Plaintiff's expert reports and five days before the then scheduled trial date, Plaintiff submitted the second report.  This report is materially different from the initial report, as it entirley shifts the foundation of Dr. Smith's calculations from the figures in the two sample contracts to figures pulled from an online article.[10] The data now relied upon by Dr. Smith existed at the time of his initial report, and its disclosure should have come with his initial report or certainly within ninety (90) days prior to trial, or thirty (30) days after Defendant's disclosure. *See* FRCP 26(a)(2)(D)(ii).  Still, even assuming the report is a proper supplemental report under FRCP 26, the time to produce it came before Plaintiff's submissions of pre-trial disclosures. FRCP 26(e)(2).

Accordingly, for the following reasons, Dr. Smith's testimony and report on Plaintiff's alleged economic damages and wage loss should be excluded from the trial of this matter as untimely.

## II.     LAW AND ARGUMENT

The United States Court of Appeals for the Fifth Circuit has explained "[w]hen a party fails to disclose information required by Federal Rule of Civil Procedure 26(a), 'the party is not allowed to use that information ... to supply evidence on a motion ... or at a trial, unless the failure was substantially justified or is harmless.'"[11]  In particular, the Fifth Circuit has considered the following four factors in determining whether to exclude evidence that is not properly designated: (1) the explanation for the failure to properly identify the evidence; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a

---

[10] Exhibit B: Smith Economics Group, Ltd. Report: Mar. 4, 2020 p1-2.
[11] *In re Compl. of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016).

continuance to cure such prejudice.[12]

A. **There Is No Substantial Justification in Plaintiff Missing the Deadline For Plaintiff's Expert Disclosures.**

Plaintiff alleged in his Complaint that he incurred lost wages and employee benefits as a result of the alleged wrongdoings of Defendant.  Thus, Plaintiff should have been aware at an early stage in this litigation of the need to supply timely expert evidence in order to calculate economic damages and lost wages.  Indeed, Plaintiff supplied such evidence when he initially presented the report of Dr. Smith, whom Defendant subsequently deposed.  Now after the passage of seven months, after submission of pre-trial inserts and on the eve of trial, Plaintiff has offered a supplemental report without a justifiable explanation for its untimely supplement. Plaintiff's silence, coupled with the fact that the evidence now relied on by Dr. Smith in this supplemental report existed at the time of his initial report, weighs in favor of excluding Dr. Smith's testimony on Plaintiff's alleged economic damages and lost income.

B. **The Supposed Importance of Dr. Smith's Testimony on Plaintiff's Alleged Economic Damages and Wage Loss Is Not Sufficient Grounds to Singularly Override This Court's Scheduling Order and the Federal Rules of Civil Procedure and Allow Such Testimony at Trial.**

Dr. Smith's testimony on Plaintiff's alleged economic damages and lost income is not sufficient grounds to singularly override this Court's scheduling order and allow such testimony at trial. *See Barrett v. A. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (explaining that "[e]ven granting that the expert testimony was significant[,] the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders").

In *Barrett v. A. Richfield Co.*, the Fifth Circuit affirmed the district court's exclusion of plaintiff's untimely expert opinions, even when their exclusion would damage the plaintiff's

---

[12] *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

case.[13]   The Fifth Circuit reasoned that "the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines."[14] *See also Geiserman*, 893 F.2d at 791 (explaining that "[w]e shall assume *arguendo* that expert testimony was significant to [plaintiff]'s case—so much the more reason to be sure its introduction was properly grounded").

Here, as in the above jurisprudence, if Dr. Smith's supplemental report and testimony was vital to the substantiation of Plaintiff's lost wage claims, then that is all the more reason for Plaintiff to have complied with the deadlines set out in the court's scheduling order. Or, alternatively, it is all the more reason for Plaintiff to have submitted a supplemental report within the times of the Federal Rules of Civil Procedure or sometime within the **seven-month span of time** since the deadline. Instead, Plaintiff waited well after Defendant submitted its expert report, after he submitted his pre-trial inserts, and **until five (5) days prior to the March 9, 2020 trial date** to submit this supplemental report. Accordingly, despite the importance of this information, Plaintiff's disregard for the timing of disclosure, weighs in favor of excluding Dr. Smith's untimely opinions on Plaintiff's alleged economic damages and lost income.

**C. Allowing the Untimely Disclosure of Dr. Smith's Opinions on Plaintiff's Alleged Economic Damages and Wage Loss Will Unfairly Prejudice Defendant If Admitted.**

Allowing the untimely disclosure of Dr. Smith's opinions on Plaintiff's alleged economic damages and wage loss will unfairly prejudice Defendant if admitted.  At the time of submission of the report, the trial of this matter was scheduled for March 9th.  For reasons unrelated to the submission of this report, the trial of this matter is now scheduled for April 6, 2020, which is <u>less than a month away</u>.  Insufficient time remains for Defendant to conduct discovery the basis of Dr.

---

[13] 95 F.3d 375, 381–82 (5th Cir. 1996).
[14] *Id.*

Smith's work (since it apparently was not done as part of his initial retention), to obtain the assistance of its expert analysis, to depose Dr. Smith, and to brief the court on any failings learned concerning this supplemental opinion.

The Fifth Circuit has long held that an untimely expert disclosure can prejudice a defendant to warrant exclusion of the expert's testimony. In *Geiserman v. MacDonald*, although the defendants did not suffer from a last-second unfair surprise, the Fifth Circuit, nevertheless, explained that allowing the untimely expert opinions would prejudice the defendants in their trial preparation, their inability to prepare for or take the expert's deposition prior to the discovery deadline, and the expenses that would result in an extension of the discovery deadline.[15]

Here, allowing Dr. Smith's testimony on Plaintiff's alleged economic damages and wage loss will prejudice Defendant for several reasons. First, because the discovery deadline was September 23, 2019,[16] the LSU Board will be precluded from conducting a supplemental discovery deposition of Dr. Smith on his supplemental opinions and figures regarding Plaintiff's alleged economic damages and wage loss. As such, at this late stage, the LSU Board will have no opportunity to meaningfully question Dr. Smith on the opinions and figures cited in his new report prior to trial.

Second, the deadline for Defendant's expert report was September 9, 2019. Therefore, Defendant, at this late stage, is unable to have its own economist, Ed Comeaux, draft a report of his own in order to rebut Dr. Smith's new opinions on Plaintiff's alleged economic damages and wage loss. *See Reliance Ins. Co. v. Louisiana Land and Expl. Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (concluding that "to allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-

---

[15] *Id.*
[16] Rec. Doc 25 p2.

minute conclusions, and thus disrupt the trial date in this case"). The untimely disclosure of Dr. Smith's new report is unfairly prejudicial, as it leaves the LSU Board with insufficient time to have its own expert economist use his knowledge and resources to counter the opinions of Plaintiff's expert.

Third and finally, the untimely disclosure of the supplemental report prejudices the LSU Board because the untimely disclosure forces the LSU Board to allocate valuable time and financial resources towards assessing the claims of the report rather than towards other essential pretrial tasks. Allowing the Plaintiff to rely on such a report would reward the trial-by-ambush mentality of springing substantive information on the Defendant in the eleventh hour. Trial is now less than a month away and there is insufficient time for the LSU Board substantively to assess and evaluate the opinions and calculations in the new report. Having to delve into this new report would consume valuable time, time which the Defendant does not have. Defendant, at this late stage, should be in the midst of preparing for the upcoming trial of this matter, not grappling to understand the calculations and opinions in a brand-new report. *Elliot v. Amadas Industries, Inc*., 796 F. Supp. 2d 796, 804 (S.D. Miss. 2011) (explaining that "[t]o allow Plaintiffs to supplement their first report would require Defendants to prepare supplemental expert testimony to rebut Plaintiffs' untimely testimony. The final pretrial conference in this matter is scheduled for April 14, 2011, and the trial is scheduled to begin on May 2, 2011. **Allowing Plaintiffs to supplement Sparks' report at this juncture would prejudice Defendants' trial preparation** and could potentially disrupt the Court's scheduling orders") (emphasis added); *Reliance Ins. Co.*, 110 F.3d at 257–58 (concluding that "to allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case").

### D. The Later-Disclosed Report is not a True Supplemental Report, and therefore Warrants Exclusion.

The late-disclosed second report is considerably different from the first report. When a "supplemental report is comprised of new, previously undisclosed opinions," it is not truly a supplement and must be filed within the deadline for expert opinions set by the court. *See Elliot*, 796 F. Supp. 2d at 802. Similarly, when a report "contains entirely new opinions or addresses subject matter outside the scope of [the initial] designation and [the] initial report, it is not a supplement. Rather, it is an untimely designation." *Ishee v. Fed. Nat'l Mortg. Ass'n,* No. 2:13-CV-234-KS-MTP, 2015 WL 224800, at *2 (S.D. Miss. Jan. 15, 2015). Here, the substance of the supplemental report is materially different from the original report. The supplemental report, unlike the original report, bases earnings capacity calculations exclusively on an article written by Barbra Katz that appears on the website for the American College of Emergency Physicians (hereafter "ACEP").[17] Therefore, the foundation of this supplemental report is intrinsically different from the original report, which based its two wage loss scenarios on the unverified, sample employment contracts from Texas hospitals.[18]

Moreover, this ACEP data was available to Dr. Smith at the time he drafted his initial report, a fact evidenced by Dr. Smith's passing reference to the ACEP article in the initial report.[19] "If an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." *Walton v. Enter. Marine Servs., LLC*, Civ. A. No. 14-2468, 2016 WL 2956815,at *2 (E.D. La. May 23, 2016)). Federal courts have – as is the case here- routinely rejected untimely "supplemental" expert testimony where the opinions are based upon information available prior to the deadline for expert

---

[17] Exhibit B: Smith Economics Group, Ltd. Report: Mar. 4, 2020 p1-2.
[18] Exhibit A: Smith Economics Group, Ltd. Report: Aug.15, 2019 p4.
[19] Exhibit A: Smith Economics Group, Ltd. Report: Aug.15, 2019 p3.

disclosures. *Lampe Berger USA, Inc. v. Scentier, Inc*., Civ. A. No. 04-354, 2008 WL 3386716, at
*2 (M.D. La. Aug. 8, 2008) (collecting cases). Dr. Smith was aware of this ACEP article when he
wrote his initial repot. He was even aware of the annual compensation figures cited in this article,
a fact demonstrated by his brief mention to annual compensation figures from the ACEP article in
his initial report.[20]  Dr. Smith should have used the ACEP article as the foundation of his initial
report, and should not now rely on the article as a foundation to this second report after this Court
determined that the foundation of his initial report – the sample contracts – lacked a proper
evidentiary foundation.[21]

Importantly, the applicability of the ACEP is already in question, with this court previously
ruling that Plaintiff's expert Julie Sherriff may not rely on survey data from the ACEP unless she
establishes at trial that these surveys only include the reported salaries of board-certified
emergency physicians.[22] The ACEP article, which serves as the backbone of Smith's supplemental
report, provides **absolutely no indication** on whether the survey differentiated between board-
certified and non-board certified emergency medicine physicians.[23] Absent some type of
verification from Plaintiff's expert Julie Sherriff that the ACEP differentiates board-certified from
non-board certified physicians, Smith's supplemental report will lack foundation.  Surely by now
questions regarding the reliability of the ACEP for the purposes sought by the Plaintiff could have
been resolved.  Dr. Smith apparently made no effort to do this, and here Defendant is left to address
yet another opinion of his that lacks reliability and fails any established methodology of predicting
wage loss because of the use of unverified data. The LSU Board should not have to devote

---

[20] Exhibit A: Smith Economics Group, Ltd. Report: Aug.15, 2019 p3.
[21] Rec. Doc 100 p26.
[22] Rec. Doc 100 p20.
[23] Exhibit C: 2018-2019 Compensation Report for Emergency Physicians, Barb Katz: September 19, 2018; The report even goes as far as to admit that "nearly half the country's emergency medicine jobs [are] open to physicians not trained in emergency medicine".

resources to analyze an untimely-disclosed report that may very well be stricken for a lack of proper factual support.

This supplemental report is not a true "supplement" within the meaning of the law. Rather, because this Court has precluded Smith from relying on the sample contracts unless the validity of the contracts is established,[24] Smith is attempting to shift the foundation of his report from the two sample contracts to the ACEP article as a last-ditch effort to salvage the applicability of his testimony. However, "**[c]ourts have made it clear that supplemental expert reports cannot be used to 'fix' problems in initial reports**." *Cooper Tire & Rubber Co. v. Farese*, No. 3:02cv210, 2008 WL 5104745, at *4 (N.D.Miss. Nov.26, 2008) (citing *Reliance Ins. Co. v. La. Land & Exploration Co*., 110 F.3d 253, 258 (5th Cir .1997)) (emphasis added) (other citations omitted); *see also United States ex rel. Gudur v. Deloitte Consulting LLP*, No. H–00–1169, 2007 WL 4322433, at *5 (S.D.Tex. Mar.5, 2007) ("supplemental report that effectively replaces an earlier report is not 'supplemental' within the meaning of Rule 26(a)") (citing *Brennan's, Inc. v. Dickie Brennan & Co., Inc*., 376 F.3d 356, 375 (5th Cir.2004)). Here, Plaintiff did nothing to validate the sample contracts, and now he should not be allowed to have his expert rely on this "supplemental" report in the eleventh hour in order to fix his initial report.

Regardless of whether this report is materially different from the prior report, **a supplemental expert report is nevertheless due by the discovery deadline**, which has elapsed in this matter. *Borgognoni v. City of Hattiesburg*, No. 2:13-CV-241-KS-MTP, 2016 WL 3017393, at *3 (S.D. Miss. May 24, 2016) (citing *Elliot*, 796 F.Supp.2d at 802).

Accordingly, for the reasons iterated above, the Court should exclude the supplemental report of Dr. Smith as untimely.

---

[24] Rec. Doc 100 p25-56.

### E. Continuing the Trial Date Neither Deters Future Dilatory Behavior Nor Enforces This Court's Scheduling Order.

The Fifth Circuit has acknowledged the propriety of exclusion even when "[a] continuance might have cured any prejudice arising from the [party's] late designation, [if] such a remedy would have entailed additional expense to the [opposing party]." The Fifth Circuit has also excluded an untimely expert disclosure when "a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders."

Here, a continuance is improper, as such a remedy will not ease the financial burden caused Defendant as it works to rebut Dr. Smith's opinions on Plaintiff's alleged economic damages and lost income. Moreover, an additional continuance would only stand to cause each side to incur additional trial preparation costs, and this Court has already ruled that there will be no further continuances in this matter.[25]

Therefore, Dr. Smith's opinions on Plaintiff's alleged economic damages and wage loss should be excluded from the trial of this matter.

### III.   CONCLUSION

The exclusion of untimely-disclosed expert opinions is mandatory and automatic unless the party demonstrates substantial justification or harmlessness.[26] For the foregoing reasons, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College prays that this honorable Court exclude the testimony and second report of Dr. Stan V. Smith as untimely.

---

[25] Rec. Doc 166 p1.
[26] *See Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir. 1996).

Respectfully submitted,

**JEFF LANDRY**
ATTORNEY GENERAL

*/s/ Denman Mims*
**KEITH W. MCDANIEL, T.A.** (Bar No. 17992)
**JULIANNE T. ECHOLS (** Bar No. 22044)
**DENMAN MIMS (**Bar No**.** 38840)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDANIEL, & WELCH, LLC
195 Greenbriar Boulevard, Suite 200
Covington, LA   70433
Tele:   (504) 831-0946 | F:   (800) 977-8810
**Attorneys for The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2020, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all counsel by operation of the court's electronic filing system.

/s/ Denman Mims
**DENMAN MIMS**