# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC GREENBERG** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-137** |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] in limine filed by the defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU Board"), to exclude the testimony and second report of plaintiff Eric Greenberg's ("Greenberg") proposed expert, Dr. Stan V. Smith ("Dr. Smith"). For the following reasons, the motion is granted in part and denied in part.

## I.

This case centers on Greenberg's claims of retaliation and hostile work environment based on religion against the LSU Board, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, following his termination from the Emergency Medicine Residency Program at Louisiana State University Health Sciences Center – New Orleans ("LSUHSC-NO"). To support his allegation that he has suffered economic loss as a result of his termination, Greenberg has retained Dr. Smith as a proposed expert to establish the value of his lost future earnings.[2]

---

[1] R. Doc. No. 172.
[2] *See* R. Doc. No. 56, at 2.

Trial was initially scheduled to commence on December 9, 2019.[3] Pursuant to the scheduling order, written reports of experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B), were due from Greenberg's proposed experts by August 9, 2019 and from the LSU Board's proposed experts by September 9, 2019.[4] The parties agreed to a two-week extension of the expert report deadlines.[5]

Greenberg timely provided an expert report by Dr. Smith, dated August 15, 2019, that provided Dr. Smith's conclusions regarding "the value of the loss of wages subsequent to the alleged wrongful termination of Eric Greenberg."[6] The conclusions in the first report calculated two scenarios for Greenberg's estimated wage loss based on two sample employment agreements that Greenberg provided to him—one from St. David's South Austin Medical Center Facility ("St. David's") in Austin, Texas, and the other from Metroplex Adventist Hospital ("Metroplex"), also in Austin.[7]

The LSU Board moved to exclude Dr. Smith's testimony, arguing that it was inadmissible because it was based on unreliable methodologies and unsupported factual assertions.[8]

The Court reviewed the parties' arguments, the record, and relevant caselaw and on November 26, 2019, the Court limited Dr. Smith's testimony as to Greenberg's

---

[3] R. Doc. No. 25, at 4.
[4] *Id.* at 2.
[5] R. Doc. No. 172-1, at 1–2.
[6] R. Doc. No. 52-4, at 1.
[7] *See id.*
[8] *See* R. Doc. No. 52-1.

loss of wages, pending Greenberg's establishment of a proper evidentiary foundation at trial.[9] Specifically, the Court stated:

> [I]f Greenberg is able to establish at trial that the Metroplex agreement was a valid employment offer made to him pending his completion of the LSUHSC-NO residency program, then Dr. Smith may testify as to the compensation that Greenberg would have received under the Metroplex agreement in scenario two. However, he may not testify as to his calculation of the projected compensation under scenario one because Dr. Smith incorrectly applied the wage rates set forth in the St. David's agreement.[10]

The Court also held that Dr. Smith may not testify to Greenberg's overall net loss of wages because Dr. Smith's conclusions as to those matters were unreliable and lacked adequate factual support.[11]

Due to various scheduling conflicts, trial was continued to March 9, 2020.[12] On March 4, 2020, Greenberg submitted a second report by Dr. Smith—five days before what was then the scheduled trial date, and well after the disclosure of expert reports were due under the scheduling order and the parties' agreement with respect to expert report deadline.[13] Dr. Smith states that the second report "is a supplement to [his] original report dated August 15, 2019."[14]

The second report also calculates Greenberg's wage loss under two scenarios, but these scenarios are not the same as those in the first report. In the second report,

---

[9] *See* R. Doc. No. 100, at 20–29.
[10] *Id.* at 29 n.77.
[11] *Id.* at 26.
[12] On March 6, 2020, the parties informed the Court that they were working towards an imminent resolution of the case. *See* R. Doc. No. 166. Consequently, trial was continued to April 6, 2020. *Id.* Due to the outbreak of COVID-19, trial was again continued. R. Doc. No. 175. The current trial date is June 15, 2020. *Id.*
[13] *See* R. Doc. No. 25, at 2.
[14] R. Doc. No. 172-3, at 1.

3

Dr. Smith's wage loss calculations are based, not on employment agreements, but on the average annual compensation for emergency physicians in the Southeast/East region, where Greenberg was completing his residency, and the Southwest/West region, where Greenberg intended to work post-residency.[15] Dr. Smith explains that he obtained this data from the Sherriff Healthcare Expert Witness Report ("Sherriff Report") prepared by Julie Sherriff ("Sherriff"), another one of Greenberg's proposed experts, which in turn, draws on the 2018–2019 Compensation Report for Emergency Physicians by the American College of Emergency Physicians ("ACEP").[16] As the data on which Dr. Smith's second report is based are entirely different from the data in the first report, so too are Dr. Smith's conclusions regarding Greenberg's projected wages in the two new scenarios.

The LSU Board argues that the second report should be excluded because it is not a "true supplemental report," as the substance of the second report is materially different from that of the first report, and it was provided to the LSU Board "on the eve of trial" without a "justifiable explanation" for the untimely disclosure.[17] Greenberg asserts in response that Dr. Smith's second report "is not intended to be a 'true supplemental report,'" and that it does not contain new information.[18] Greenberg also argues that Dr. Smith's testimony with respect to the second report would be proper and in accordance with the Court's previous order.[19]

---

[15] *Id.*
[16] *Id.*
[17] R. Doc. No. 172-1, at 4, 8.
[18] R. Doc. No. 174, at 3.
[19] *Id.* at 4.

4

## II.

Federal Rule of Civil Procedure 26(a)(2)(D) provides in pertinent part that expert disclosures must be made at the times and in the sequence that the court orders. Initial expert disclosures must be full and complete. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016); Fed. R. Civ. P. 26(a)(2)(B). Under Rule 26(e), parties are required to timely supplement previous disclosures, including information contained in expert reports, if they learn "that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)–(2). Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due.[20] Fed. R. Civ. P. 26(e)(2).

The parties appear to agree that Dr. Smith's second report is not a supplement to Dr. Smith's first report, as contemplated by Rule 26(e).[21] As such, Dr. Smith's second report was due by August 23, 2019, pursuant to the scheduling order and the parties' agreement.[22] Greenberg does not argue that the disclosure of Dr. Smith's second report was timely pursuant to any previous order by the Court, agreement by the parties, or the Federal Rules of Civil Procedure. Therefore, the Court must

---

[20] Rule 26(a)(3) requires pretrial disclosures to be made at least thirty days before trial, unless the court orders otherwise. Fed. R. Civ. P. 26(a)(3).
[21] *See* R. Doc. No. 172-1, at 8; R. Doc. No. 174, at 3. Even if Dr. Smith's second report was considered to be a supplemental expert disclosure pursuant to Rule 26(e), it would be untimely under Rule 26(e)(2).
[22] R. Doc. No. 25, at 2; R. Doc. No. 172-1, at 1–2.

5

determine whether Dr. Smith's second report should be excluded because it was untimely disclosed.

Under Federal Rule of Civil Procedure 37(c), if a party fails to provide information as required by Rule 26(a) or (e), that party is not allowed to use that information at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). The court considers four factors to determine whether to exclude expert evidence as a sanction for an untimely disclosure: (1) the explanation for failing to disclose; (2) the importance of the testimony; (3) potential prejudice to the opposing party in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020). The Court will examine each factor in turn.

> i. *Explanation for Failing to Disclose*

Greenberg explains that Dr. Smith prepared his second report in response to a request from Greenberg's counsel for a "supplemental document to address the scope of [Dr. Smith's] testimony in light of this Court's ruling and to specify how [Dr. Smith] would address this Court's concerns stated therein."[23] According to Greenberg, at least a week before his counsel received the report, his counsel notified the LSU Board of the request for the second report and stated that they would provide the LSU Board with a copy as soon as it was available.[24] The LSU Board received the second report on March 4, 2020.[25]

---

[23] R. Doc. No. 174, at 2.
[24] *Id.*
[25] R. Doc. No. 172-1, at 3.

6

Although Greenberg explained the timeline of the request for and receipt of Dr. Smith's second report, he has not provided an explanation for its untimely disclosure. Greenberg contends that Dr. Smith's second report "address[es] concerns raised in this Court's November 26, 2019 ruling."[26] He stated that he provided Dr. Smith's second report to the LSU Board and the Court "for the purposes of giving notice as to how Dr. Smith will address these issues at trial."[27] Although Greenberg affirmed that he "will not seek to introduce the [second] report into evidence," he nevertheless intends to elicit testimony from Dr. Smith regarding Dr. Smith's Southeast/East and Southwest/West wage calculations.[28]

Greenberg has been aware of the Court's ruling with respect to Dr. Smith's first report and the limitations on Dr. Smith's testimony since November 26, 2019. At that time, trial was scheduled to commence on December 9, 2019.[29] On December 4, 2019, trial was reset to commence on March 6, 2020.[30] Despite these intervening months, Dr. Smith's second report was not disclosed to the LSU Board until five days before what was then the start of trial. Although Dr. Smith's second report attempts to "address concerns" raised in the Court's previous order, such an alleged purpose does not justify the significantly late disclosure. Greenberg's explanation—or rather the lack thereof—weighs against the admissibility of Dr. Smith's second report.

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 3–4. Greenberg also acknowledged that Dr. Smith's second report "addresses matters to which this Court has ruled that he may not testify." *Id.* at 3.
[29] R. Doc. No. 25, at 4.
[30] R. Doc. No. 125.

7

### ii. *Importance of the Testimony*

As the Court previously explained, the Court ruled that Dr. Smith may not testify to the Metroplex calculations absent a proper evidentiary foundation. Significantly, Greenberg does not argue that Dr. Smith's second report is of overriding importance.[31] Rather, Greenberg asserts that he "is confident that his testimony at trial will provide the requisite evidentiary foundation so that Dr. Smith may testify regarding the Metroplex agreement"; Dr. Smith's second report provides "anticipate[d]" testimony on the regional salaries "in the event that [Dr. Smith] is not permitted to testify to" his conclusions based on the Metroplex agreement.[32]

Based on Greenberg's explanation, it appears that the calculations in Dr. Smith's second report are backup conclusions regarding Greenberg's projected compensation if Dr. Smith is unable to testify to the Metroplex wage projections. However, "supplemental documents" may not be used to shore up deficiencies in earlier reports. *See Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (affirming district court's denial of the plaintiff's request to supplement its expert report and stating that district court judges "have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case"). In addition, "supplemental 'disclosures are not intended to

---

[31] The Court notes that if Greenberg cannot establish a proper evidentiary foundation for the Metroplex agreement, Dr. Smith's testimony regarding the second report, assuming that a proper evidentiary foundation for it was established, would be important because Greenberg would presumably otherwise lack any expert testimony concerning his wage loss.

[32] R. Doc. No. 174, at 4.

provide an extension of the deadline by which a party must deliver the lion's share of its expert information.'" *Bean*, 841 F.3d at 371 (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)).

The data on which Dr. Smith's second report is based were available to him when he completed his first report—indeed, in his first report, Dr. Smith stated that he reviewed the ACEP data and obtained the average compensation rates for the Southeast/East and Southwest/West regions.[33] Yet Dr. Smith's first report did not use this data, and instead relied on evidence whose admissibility has not yet been established. While Dr. Smith did refer to these regional averages in his first report such that they would not be "new information," he did not perform any calculations of Greenberg's projected compensation using that data. Dr. Smith's conclusions regarding Greenberg's projected compensation under the two scenarios in the second report are entirely new.

Serving as a basis for alternative testimony does not bolster the importance of an untimely disclosure. Any claimed importance of Dr. Smith's expert testimony "merely underscores the need for [Greenberg] to have complied with the court's deadlines or at least informed the [Court] in advance if good faith compliance was not possible."[34] *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996). Moreover,

---

[33] *See* R. Doc. No. 52-4, at 3–4.
[34] In addition, the admissibility of Dr. Smith's testimony based on the ACEP data is tenuous. As the Court stated in its November 26, 219 order, conclusions that rely on the ACEP data may not be admissible if Greenberg cannot establish at trial that the data only include the reported salaries of board-certified emergency medicine physicians. The Court made this ruling with respect to the admissibility of conclusions by Sherriff that are based on the ACEP data. R. Doc. No. 100, at 20.

9

"[e]ven granting that the testimony [is] significant '[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and [the] scheduling order[ ].'" *Id.* (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)). Thus, this factor tends to weigh against the admissibility of Dr. Smith's second report, or is at best neutral.

### iii. Potential Prejudice

Due to the late disclosure, allowing Dr. Smith to testify to his conclusions in the second report could significantly prejudice the LSU Board. The LSU Board argued that the untimely disclosure "forces the LSU Board to allocate valuable time and financial resources towards assessing the claims of the report rather than towards other essential pretrial tasks."[35] Because the discovery deadlines have long passed, the LSU Board does not have an adequate opportunity for its own experts to evaluate and respond to Dr. Smith's second report.[36] The prejudice factor weighs heavily in favor of excluding the second report.

---

Because Smith's second report is based on the same data from the Sherriff Report, this limitation also applies to Dr. Smith's testimony with respect to the second report. During a telephone conference with counsel for both parties on March 25, 2020, counsel informed the Court that it is unlikely to find any reported salary information that distinguishes between board- and non-board- certified emergency medicine physicians.

[35] R. Doc. No. 172-1, at 7.

[36] Analysis of Dr. Smith's second report by the LSU Board's experts may be significant to the LSU Board. The LSU Board's proposed expert economists, Ed Comeaux and Charles Theriot, evaluated Dr. Smith's first report and found a significant mathematical error in Dr. Smith's wage calculation with respect to the St. David's agreement. *See* R. Doc. No. 100, at 23. This error resulted in an approximately $500,000 overstatement of Greenberg's projected wage loss in the St. David's scenario. *Id.*; R. Doc. No. 52-12, at 8. Dr. Smith's second report has not been similarly scrutinized.

10

> iv. *Availability of a Continuance to Cure Such Prejudice*

Trial has been continued to June 15, 2020 due to the outbreak of COVID-19.[37] At this time, the Court does not intend to grant any further continuances or amend any deadlines previously set forth. Although the most recent continuance may provide the LSU Board additional time for its experts to evaluate Dr. Smith's second report and for the LSU Board to re-depose Dr. Smith and respond to his new conclusions, the outbreak of COVID-19 and related restrictions are significant impediments to any curative potential. Thus, this factor also weighs against the admissibility of Dr. Smith's second report.

### III.

In light of the foregoing, Greenberg has not demonstrated that the untimely disclosure of Dr. Smith's second report is substantially justified or harmless pursuant to Rule 37(c). Therefore, Dr. Smith may not testify to his conclusions from the second report. The second report does not, however, affect the admissibility of Dr. Smith's testimony with respect to his first report, as set forth in the Court's November 26, 2019 order.[38] Consistent with the November 26, 2019 order, Dr. Smith may testify to Greenberg's projected compensation based on the Metroplex agreement, as delineated in Dr. Smith's first report, if Greenberg establishes the proper evidentiary foundation for such testimony at trial.[39]

---

[37] R. Doc. No. 175.
[38] *See* R. Doc. No. 100, at 20–29.
[39] *See id.*

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

New Orleans, Louisiana, April 7, 2020.

                                                        **LANCE M. AFRICK**
                                          **UNITED STATES DISTRICT JUDGE**