## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ERIC GREENBERG                                                CIVIL ACTION

VERSUS                                                              No. 19-137

BOARD OF SUPERVISORS OF LOUISIANA                SECTION I
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

### ORDER & REASONS

Before the Court is plaintiff Eric Greenberg's ("Greenberg") motion[1] for leave to amend his witness list to include three additional witnesses: Dr. Charles Hilton ("Hilton"), Charles C. Theriot ("Theriot"), and Edward J. Comeaux, III ("Comeaux"). Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU Board"), opposes the motion.[2] For the following reasons, the motion is denied.

Hilton, Theriot, and Comeaux, the latter two of whom are proposed experts, were included on the LSU Board's initial witness list, which was filed on September 9, 2019.[3] Greenberg's initial witness list, also filed on September 9, 2019, included Hilton, but not Theriot or Comeaux.[4] In the parties' joint proposed pretrial order, which was filed on February 18, 2020, the LSU Board included Hilton and Comeaux as witnesses it "may call"; it did not include Theriot.[5] Greenberg did not list Hilton

---

[1] R. Doc. No. 179.
[2] R. Doc. No. 185.
[3] R. Doc. No. 36.
[4] R. Doc. No. 37.
[5] R. Doc. No. 152, at 41.

1

as a potential witness in the joint proposed pretrial order, and he has not previously identified Theriot or Comeaux as witnesses whom he intends to call.[6]

# I.

This case centers on Greenberg's claims of retaliation and hostile work environment based on religion against the LSU Board, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, following his termination from the Emergency Medicine Residency Program at Louisiana State University Health Sciences Center – New Orleans. To support his allegation that he has suffered economic loss as a result of his termination, Greenberg retained Julie Sherriff ("Sherriff") and Dr. Stan v. Smith ("Dr. Smith") as proposed experts to establish his economic damages.[7] Both Sherriff and Dr. Smith prepared expert reports for Greenberg.[8]

The LSU Board retained Theriot and Comeaux to analyze Dr. Smith's expert report and to conduct a separate analysis of Greenberg's alleged past and future lost earnings.[9] Theriot and Comeaux's conclusions are set forth in a joint expert report that they prepared for the LSU Board.[10]

---

[6] *See* R. Doc. No. 152, at 36–42.

[7] *See* R. Doc. No. 56; R. Doc. No. 57; R. Doc. No. 152, at 38–39. Sherriff is the founder and president of a physician search firm serving the healthcare industry. R. Doc. No. 50-3, at 1. Dr. Smith, the president of Smith Economics, is an economic and financial consultant. R. Doc. No. 52-4, at 1.

[8] R. Doc. Nos. 50-3 & 52-4.

[9] R. Doc. No. 52-12, at 2. Theriot and Comeaux are Certified Public Accountants with the firm Charles C. Theriot & Company, L.L.C. *Id.* at 54–59.

[10] R. Doc. No. 52-12.

Hilton, the Associate Dean for the Office of Academic Affairs at Louisiana State University Health Sciences Center – New Orleans, would testify on behalf of the LSU Board to the "procedures and policies that were in place concerning [Greenberg's] termination."[11]

Trial was initially scheduled to commence on December 9, 2019.[12] Pursuant to the scheduling order, each party's witness list was due by September 9, 2019, written reports of Greenberg's proposed experts were due by August 9, 2019, and written reports of the LSU Board's proposed experts were due by September 9, 2019.[13] The scheduling order also required the timely filing of a joint pretrial order that includes a list of the party's witnesses.[14]

On November 26, 2019, based on the Court's finding that certain aspects of Sherriff's and Dr. Smith's proposed testimony were unreliable, the Court limited the testimony that each witness would be able to provide at trial.[15] With respect to compensation figures, Sherriff may only testify to the average salaries of emergency medicine physicians based on survey data from the American Medical Group Association (AMGA), American College of Emergency Physicians (ACEP), and Merritt Hawkins & Associates (MHA), but only if it is established at trial that such data are based upon the reported salaries of board-certified emergency medicine

---

[11] R. Doc. No. 152, at 41.
[12] R. Doc. No. 25, at 4.
[13] *Id.* at 2–3. The parties agreed to a two-week extension of the expert report deadlines. R. Doc. No. 172-1, at 1–2.
[14] R. Doc. No. 25-1, at 8.
[15] *See* R. Doc. No. 100.

physicians.[16] Dr. Smith's testimony is limited to his conclusion regarding the compensation that Greenberg would have received pursuant to an alleged employment agreement with Metroplex Adventist Hospital in Austin, Texas.[17] Greenberg must establish a proper evidentiary foundation for such testimony to be admissible.[18]

Due to various scheduling conflicts and the outbreak of COVID-19, there have been four trial continuances.[19] Trial is currently scheduled to commence on October 5, 2020.[20] Notwithstanding, the deadlines for witness lists and expert reports have remained as previously set forth in the scheduling order issued in connection with the initial December 9, 2019 trial date.[21]

## II.

Pursuant to Federal Rule of Civil Procedure 37(c), if a party fails to identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that witness to supply evidence at trial, unless the failure was substantially justified or is

---

[16] *Id.* at 20. Sherriff may also offer her opinions that most hospitals require emergency medicine physicians to be board-certified and that there is a high demand for emergency medicine physicians. *Id.* at 13.

[17] *Id.* at 29 n.77.

[18] *Id.* Dr. Smith is not permitted to testify to Greenberg's projected compensation relating to an alleged employment agreement with St. David's South Austin Medical Center Facility, his wage offset, or his overall loss of wages. *Id.* Dr. Smith is also not permitted to testify to a second report he completed, provided by Greenberg to the LSU Board on March 4, 2020, which included new wage loss calculations. *See* R. Doc. No. 176.

[19] R. Doc. No. 125 (continuing trial to March 9, 2020); R. Doc. No. 166 (continuing trial to April 6, 2020); R. Doc. No. 175 (continuing trial to June 15, 2020); R. Doc. No. 178 (continuing trial to October 5, 2020).

[20] R. Doc. No. 178.

[21] R. Doc. No. 25.

harmless.[22] Four factors guide the court's Rule 37(c) analysis: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice to the opposing party in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Pursuant to Rule 16(b)(4), a scheduling order may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). District courts have broad discretion to preserve the pretrial discovery process. *See Geiserman*, 893 F.3d at 791. In connection with that discretion, the court may, pursuant to Rule 16(f), "[on] motion or on its own . . . issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). When determining whether to exclude witnesses as a sanction for a violation of a scheduling or other pretrial order, the United States Court of Appeals for the Fifth Circuit looks to the same factors as those described with respect to Rule 37 to determine whether the district court properly exercised its discretion. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *Geiserman*, 893 F.2d at 791.

The Court will examine each factor in turn.

---

[22] Rule 26(a) delineates required disclosures, and Rule 26(e) governs the duty to supplement or correct Rule 26(a) disclosures.

*i.   Greenberg's Explanation*

Greenberg does not provide any explanation with respect to his request to include Hilton—whom Greenberg did not list as a witness in the joint proposed pretrial order—in an amended witness list. Given the lack of information, this factor does not weigh in Greenberg's favor with respect to Hilton.

As to Theriot and Comeaux, Greenberg explains that he seeks to include them in an amended witness list to "secure their availability at trial in case [the LSU Board] does not call them."[23] Otherwise, Greenberg asserts, he "risks conducting a trial with no expert testimony as to front pay," in light of the Court's rulings with respect to the testimony of Sherriff and Dr. Smith.[24] As previously stated, Theriot and Comeaux were included on the LSU Board's September 9, 2019 witness list.[25] However, the LSU Board only included Comeaux—not Theriot—as a "may call" witness in the parties' joint proposed pretrial order.[26]

As an initial matter, Greenberg's assertion that the testimony of Theriot and Comeaux may establish a potential front pay award puzzles the Court. The Court has informed counsel for both parties that an award of front pay would not be appropriate based on the facts of this case.[27] The Court has also advised counsel that it will not instruct the jury as to a front pay determination.

---

[23] R. Doc. No. 188, at 2.

[24] *Id.*

[25] R. Doc. No. 36, at 4.

[26] R. Doc. No. 152, at 41.

[27] "[F]ront pay is a prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final judgment" as a result of the discriminatory conduct. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490–91 (5th Cir. 2007), *order*

Regardless, the Court is not persuaded by Greenberg's explanation, which does not provide sufficient detailed justification for an untimely designation. The Court is mindful that the scope of admissible testimony by Greenberg's experts, Sherriff and Dr. Smith, has been limited significantly. Notably, however, such limitations were known to Greenberg since November 26, 2019—nearly six months before he filed the instant motion. At no time during this period, which included several trial continuances, did Greenberg move to amend his witness list. He has not sufficiently explained why he intends to do so now, at this late stage of the litigation. While Greenberg did attempt to buttress the expert testimony that Dr. Smith could offer by completing a new report, the second report, which was based on new data and contained new conclusions, was not disclosed to the LSU Board until five days before what was then the first day of trial.[28] The Court granted the LSU Board's motion to exclude Dr. Smith's second report because Greenberg did not demonstrate that its untimely disclosure was substantially justified or harmless pursuant to Rule 37(c).[29]

---

*clarified* (Sept. 27, 2007). Front pay "is intended to compensate the plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination." *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002). Even if Greenberg's termination from the emergency medicine residency program was not unlawful, the LSU Board would have only continued to pay him through the duration of his residency, which would have ceased prior to the entry of final judgment. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 402 (5th Cir. 2002) (holding that the plaintiffs were not entitled to front pay because the defendant-employer terminated all of its employees prior to the entry of final judgment; even absent discrimination, the plaintiffs would not have continued to work for the defendant-employer after the date of entry of final judgment).

[28] R. Doc. No. 176, at 3.

[29] *Id.* at 11.

Greenberg's failure to properly prepare expert testimony establishing his economic damages is not a compelling reason to grant him the relief he now seeks.

As with Hilton, this factor also does not weigh in favor of allowing Greenberg to amend his witness list to include Theriot and Comeaux.

## ii.    *Importance of the Testimony*

Greenberg has not explained the importance of Hilton's testimony. Thus, this factor does not support Greenberg's request to add Hilton to an amended witness list.

Greenberg argues that Theriot's and Comeaux's testimony would be important to establish front pay because, in light of the Court's rulings, it is "unclear" whether his previously-designated experts will be able to offer "meaningful testimony" on that issue.[30]

As stated previously, any testimony as to front pay would not be appropriate in this case. To the extent that Greenberg intends to use Theriot's and Comeaux's testimony to establish the value of his lost future earnings, such testimony may be of some importance. However, Greenberg has not sufficiently explained why he needs Theriot's and Comeaux's testimony to establish his lost future earnings.

Greenberg has not asserted a compelling need for Theriot and Comeaux to testify, nor has he demonstrated why their testimony would be vital to establish his damages. Furthermore, while the scope of admissible testimony by Sheriff and Dr. Smith has been limited, Greenberg has not been precluded from calling these timely-

---

[30] R. Doc. No. 188, at 2.

designated experts and having them testify in accordance with the Court's prior orders.[31]

Once again, like with Hilton, this factor does not weigh in favor of Greenberg with respect to Theriot and Comeaux.

### iii.   Potential Prejudice to the LSU Board

The LSU Board argues that it would be prejudiced if the Court permitted Greenberg to amend his witness list to include Theriot and Comeaux, because Greenberg has not disclosed the opinions that he intends to elicit from them.[32] In response, Greenberg stated that he would question Theriot and Comeaux regarding the expert report they jointly prepared for the LSU Board.[33] However, Greenberg did not identify the specific testimony he intends to introduce.

The Court is perplexed by the LSU Board's contention that it would be prejudiced because it "has not had the opportunity to cross those opinions or show the basis for them may be unsupported."[34] The LSU Board retained Theriot and Comeaux for this case, and it is, presumably, familiar with the conclusions in their report and

---

[31] *See Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 39 (1st Cir. 2008) (finding no abuse of discretion by the district court in denying the plaintiff's motion to compel the defendant's damages expert to testify "in the absence of any showing of any need for the plaintiff to call the witness").

[32] R. Doc. No. 185, at 3.

[33] R. Doc. No. 188, at 3. Neither party will be permitted to elicit testimony concerning any portions of the expert report by Theriot and Comeaux that address analyses and conclusions by Dr. Smith that the Court has found to be inadmissible.

[34] R. Doc. No. 185, at 3. If the LSU Board intends to call Comeaux, it should not seek to introduce expert testimony that is not based on a reliable foundation. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

the bases for those conclusions. Moreover, as previously stated, Theriot and Comeaux were included on the LSU Board's September 9, 2019 witness list,[35] and Comeaux is listed as a "may call" witness for the LSU Board in the February 18, 2020 joint proposed pretrial order.[36] This factor weighs in favor of Greenberg with respect to Theriot and Comeaux.

As to Hilton, the LSU Board did not provide any specific reason explaining why it would be prejudiced by allowing Greenberg to include Hilton on an amended witness list. The Court also finds little reason for prejudice. Hilton is a fact witness whom the LSU Board "may call" on its own behalf.[37] Moreover, the LSU Board was aware of the possibility that Greenberg might call Hilton when Greenberg included Hilton on his September 9, 2019 witness list. Thus, the LSU Board would not incur any undue surprise by Hilton's testimony. This factor also weighs in favor of Greenberg with respect to Hilton.

### iv.    Availability of a Continuance to Cure Prejudice

Considering the trial date of October 5, 2020 and the multiple continuances that have been granted, the Court is disinclined to continue trial any further. Furthermore, a continuance would not address any alleged prejudice to the LSU Board, as discovery deadlines have long passed. The Court also notes that neither party has requested a continuance.

---

[35] R. Doc. No. 36, at 2, 35.
[36] R. Doc. No. 152, at 41.
[37] It appears that the LSU Board does, in fact, intend to call Hilton, as it concedes that Hilton "will be available for cross-examination" by Greenberg at trial. R. Doc. No. 185, at 2 n.5.

This factor does not support Greenberg's request to amend his witness list to include Hilton, Theriot, and Comeaux.

**III.**

Considering the balance of factors, particularly those that do not weigh in Greenberg's favor, the addition of Theriot, Comeaux, and Hilton to Greenberg's witness list is not substantially justified, and good cause has not been demonstrated.

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, June 15, 2020.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**