UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| ERIC GREENBERG, MD. | * | CIVIL NO. 19-137 |
|---|---|---|
|  | * |  |
|  | * |  |
|  | * | JUDGE: LMA |
| VERSUS | * |  |
|  | * | MAGISTRATE: JCW, JR |
| BOARD OF SUPERVISORS | * |  |
| OF LOUISIANA STATE UNIVERSITY | * | SECTION "I"(2) |
| AND AGRICULTURAL AND | * |  |
| MECHANICAL COLLEGE, | * |  |
|  | * |  |
|  | * |  |

**DEFENDANT'S MEMORANDUM
REGARDING EVIDENTIARY OBJECTIONS**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereafter "the LSU Board," who according to this Court's Minute Entry (Rec. Doc. 208), respectfully submits its *Memorandum* addressing unresolved evidentiary issues. For the following reasons, the LSU Board prays that this Court rule on the objections noted in the following *Memorandum.*

**I.    The Exhibits Concerning Dr. Luke Lebas Lack Relevance to the Remaining Causes of Action and are Unduly Prejudicial.**

In the plaintiff's demonstrative exhibit entitled "Greenberg Timeline of Events" (attached), plaintiff repeatedly mentions allegations concerning Dr. Luke Lebas that warrant exclusion on relevance grounds. In particular, plaintiff alleges that Dr. Lebas remarked, "You're a Jew. You should be at Jewlane" in February of 2013, and further alleges that Dr. Lebas harassed him in the Fall of 2015.  Here, these mentions to Dr. Lebas in Plaintiff's timeline of events should be excluded because they are irrelevant to the plaintiff's remaining causes of action.

1

Plaintiff's only remaining causes of action are Plaintiff's hostile work environment claim and retaliation claim under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, *et seq*. Specifically, the plaintiff alleges that the LSU Board (1) subjected him to a hostile work environment based on his Jewish faith and (2) retaliated against the plaintiff by terminating him from the Spirit of Charity Emergency Medicine Residency Program once he reported anti-Semitic harassment to the LSU Board. However, none of these alleged actions involving Dr. Lebas have any bearing on these claims, and thus any mention of these allegations should be stricken as irrelevant.

Turning first to the alleged "Jewlane" comment, this incident purportedly occurred when the plaintiff was interviewing for an LSU residency position in February of 2013. However, plaintiff's employment in the residency program began **months later**, in July of 2013. This alleged comment could not have contributed to any hostile work environment for the purposes of 42 USC §2000e because **LSU did not even employ plaintiff at this time**. In a similar vein, this alleged comment is irrelevant to plaintiff's retaliation claim. To prevail on his retaliation claim, plaintiff will have to show that "(1) **the employee** engaged in an activity that Title VII protects; (2) the employer took an adverse employment action against **the employee**; and (3) there is a causal connection between the protected activity and the adverse employment action." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 862 (SD Tex. 2010)(citing *Brazoria County, Tex. v. EEOC,* 391 F.3d 685, 692 (5th Cir.2004)) (emphasis added). Because plaintiff was not an employee of the LSU residency program at the time of this February 2013 incident, he necessarily could not be an "employee" for the purposes of 42 USC §2000e. Thus, this alleged, unsubstantiated comment is wholly irrelevant and bears a prejudice that outweighs any probative value.

Turning now to the alleged harassment incident on September 18, 2015, this incident should be stricken from plaintiff's "Timeline" because it has no bearing on either plaintiff's hostile work environment claim or his retaliation claim. To prevail on a hostile work environment claim, a plaintiff must show, among other things, that the harassment he allegedly faced from the LSU Board was based on the plaintiff's membership in a protected class. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also EEOC v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013); *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162-163 (5th Cir. 2007). However, even if plaintiff's account of the September 18, 2015, allegation is accurate, the September 18, 2015, incident nevertheless lack any nexus to plaintiff's membership in a protected class (i.e., to his membership in the Jewish faith) and thus cannot be used by plaintiff in an attempt to meet his burden on his hostile work environment claim. As evidenced by Plaintiff's Exhibit 17 (an email where plaintiff reported the September 18, 2015, incident to his supervisor), the September 18, 2015, incident had nothing to do with plaintiff's membership in a protected class. Instead, Plaintiff and Dr. Lebas allegedly disagreed about whether a patient should go "to the psych area." In response to the disagreement, Dr. Lebas allegedly approached plaintiff and screamed at him "about the patient and questioned my medical knowledge." Clearly, what plaintiff has described as "harassment" in his timeline is simply a heated disagreement about patient care.

In the email recounting this September 18, 2015, event Plaintiff does not allege that Dr. Lebas used any type of anti-Semitic slur, nor does it allege that Dr. Lebas screamed at plaintiff because he was Jewish. On the contrary, the email states explicitly that Dr. Lebas screamed at him "about the patient," not because of any sort of anti-Semitism. For purposes of a hostile work environment claim, allegations of harassment cannot be considered unless they are "based on a factor rendered impermissible by Title VII"; in other words, they cannot be considered unless they

3

were motivated by a disdain for plaintiff's membership in a protected class. *Hernandez v. Yellow Transp., Inc.,* 670F.3d 644, 654 (5th Cir. 2012) (wherein plaintiff failed to show that mistreatment he faced was on account of his Hispanic race, a protected class). Here, the facts do not support any relationship between the September 18, 2015 allegation and the plaintiff's membership in a protected class. This incident is irrelevant to the plaintiff's hostile work environment claim and should be stricken from the timeline.

Similarly, the September 18, 2015, entry is irrelevant to Plaintiff's Title VII retaliation claim. To prevail on a retaliation claim under Title VII, a plaintiff must prove that "(1) the employee engaged in protected [] activity, (2) the employee suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004), opinion clarified, No. 03- 10074, 2004 WL 2107672 (5th Cir. Sept. 17, 2004).

Considering the preceding criteria, the September 18, 2015, allegation is not relevant to the retaliation claim because it bears no relation to plaintiff's exercise of an activity protected under Title VII, nor does it pertain to any employment action for Title VII. If, for example, plaintiff had alleged that Dr. Lebas screamed at plaintiff because of his choice to report anti-Semitic discrimination to the LSU Board, then the allegation of screaming may have borne some relevance on the retaliation claim. However, plaintiff has made no showing, nor has he even alleged, that Dr. Lebas screamed at him because he engaged in a protected activity. This incident is irrelevant, and any mention to it should be stricken from the plaintiff's timeline.

Moreover, this Court has already assessed the admissibility of evidence of a similar incident regarding Dr. Lebas and has precluded admission of this evidence. (Rec Doc 111). Specifically, the plaintiff previously attempted to introduce evidence of an incident where Dr. Lebas allegedly

4

pulled a knife on plaintiff. The LSU Board objected, noting that this allegation is irrelevant and unduly prejudicial. The plaintiff has made no claim that the indecent bore any causal nexus to the plaintiff's membership in a protected class. (Rec. Doc. 102). This Court agreed with the LSU Board, ordering that "without prior permission from the Court, no party may reference or introduce evidence about the alleged July 20, 2016, knife incident". (Rec. Doc. 111). **Despite this order from the Court, plaintiff nevertheless lists the July 2016 knife incident in his "Timeline" demonstrative exhibit**. Not only should this mention to the Lebas knife incident be stricken according to this Court's Oder in Rec. Doc 111, but it would be entirely inconsistent to allow the plaintiff to introduce evidence of the September 18, 2015, allegation when this Court already precluded reference to an incident because it was completely unrelated to the plaintiff's membership in a protected class.

Likewise, in plaintiff's demonstrative exhibit entitled "Suau Quotes," there is a quote concerning Dr. Lebas that should be excluded, as it is irrelevant. The quote, which Dr. Suau allegedly made, reads, "Lebas is a racist asshole.  I'd fire him if I could, but I can't." Not only is this quote unsubstantiated, but it has no bearing on plaintiff's claims. For the plaintiff to prevail on his hostile work environment claim, he will need to show that the harassment he allegedly faced was based on his membership in a protected class, which in this case is his religion. Thus, even if the purported contents of this quote were accurate, the selection is nevertheless irrelevant because it has no bearing on whether plaintiff faced workplace harassment based on his Judaism. Thus, this entry on plaintiff's "Suau Quotes" demonstrative exhibit should be stricken.

**II.     The Exhibits Concerning Dr. Tracy Legros Lack Relevance to the Remaining Causes of Action and are Unduly Prejudicial.**

In Plaintiff's "Timeline," he alleges that "Dr. Lebas" screamed at him on August 31, 2015. However, **this reference to Dr. Lebas is a typo on the plaintiff's part**. As evidenced by

5

Plaintiff's Exhibit 16, **the alleged incident involved Dr. Tracy Legros yelling at plaintiff, not Dr. Lebas**. Plaintiff's Exhibit 16 is an email where plaintiff reported that Dr. Legros screamed at him for taking his gown off during a procedure involving a Hepatitis B patient and "not listening" to Dr. Legros during the procedure. As made clear by the email, Dr. Legros' choice to reprimand plaintiff was on account of his choice to take his gown off during a medical procedure and to ignore the orders of Dr. Legros. This is a patient care issue. There is no indication whatsoever that Dr. Legros reprimanded the plaintiff on account of his membership in a protected class or out of retaliation for the plaintiff engaging in an activity protected under Title VII. Thus, this August 31, 2015, alleged incident is wholly irrelevant to plaintiff's remaining causes of action and out to be stricken from plaintiff's timeline to prevent an undue waste of time and jury confusion.

Similarly, in the plaintiff's "Timeline" demonstrative exhibit, he mentions a July 23, 2014, incident wherein the plaintiff made a "Complaint about Tracy Legros."  However, as with the Lebas Allegations discussed above, the plaintiff has made no indication that this complaint bears any nexus to Plaintiff's membership in a protected class, nor is there any indication that the plaintiff made a complaint about Dr. Legros to an alleged incident of Title VII retaliation.  Nor does this complaint have any supporting documentation. As with the August 31, 2015, complaint involving Dr. Legros, this "Timeline" entry ought to be stricken from the record.

**III.   Plaintiff's February 17, 2017, and August 9, 2016, Complaints about Dr. Suau and the Alleged Quotes in Plaintiff's "Suau Quotes" Demonstrative Exhibit. Ought to be Stricken as Irrelevant.**

In plaintiff's "Timeline" demonstrative, he mentions that on February 17, 2016, he complained to Dr. DeBlieux about Dr. Suau. As evidenced by the email chain (Plaintiff's Exhibit 23), this complaint has no bearing on Dr. Suau's alleged anti-semitic workplace harassment, nor does the complaint have any bearing on plaintiff's retaliation claim. Instead, the text of the email shows

that plaintiff was complaining about Dr. Suau 1) repeatedly accusing plaintiff of lying; 2) revoking plaintiff's ability to moonlight; 3) threatening not to support his application to fellowship. However, there is no showing that these alleged behaviors from Dr. Suau are in any way related to plaintiff's membership in a protected class, nor is there any indication that Dr. Suau engaged in these behaviors to retaliate against plaintiff for engaging in protected activity under Title VII. Thus, this "complaint" lacks any probative value on the plaintiff's remaining claims and ought to be stricken from plaintiff's demonstrative Timeline.

Plaintiff's Timeline demonstrative also includes an August 9, 2016, entry reading, "Dr. Suau will now decide whether to not Plaintiff will be suspended." As with the February 17, 2016, entry, there is no indication that this entry pertains to either the hostile work environment claim or the retaliation claim. Thus, the entry should be excluded as irrelevant. *See Fed. R. Evid. 403* ("Evidence is [only] relevant if: it has any tendency to make a fact more or less probable than it would be without the evidence"). Moreover, this entry should be excluded to the extent that it states the obvious. Dr. Suau was Plaintiff's direct supervisor; he would have a role in deciding whether the plaintiff would be suspended. Plaintiff should not be able to present this obvious fact as if it bore any relevance on the remaining claims.

Likewise, plaintiff's "Suau Quotes" timeline features a litany of irrelevant quotes that warrant exclusion. Other than an alleged quote about circumcision, the entirety of quotes featured on this demonstrative feature no relation to plaintiff's remaining claims. Aside from the alleged circumcision comment, not a single quote bears a nexus to plaintiff's membership in a protected class. Nor is there any indication that any of these quotes pertain to an adverse employment action for plaintiff's retaliation claim. Allowing plaintiff to display these quotes would amount to an undue waste of time.

**IV.     Several of Plaintiff's Exhibits Warrant Exclusion on Relevancy Grounds because these Exhibits do not make any Element of the Remaining Causes of Action More or less Likely.**

The Federal Rules of Evidence call for the admission only of "relevant evidence." *See Fed. R. Evid. 402*. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Fed. R. Evid. 401; US v. Carter*, 522 F.2d 666, 685 (D.C. Cir. 1975). Equally important, the Federal Rules also provide for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [the likelihood of] misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Fed. R. Evid. 403*. Unfair prejudice has been defined as an undue tendency to suggest a decision on an improper basis, commonly an emotional one. *See, e.g., Wright & Graham, Federal Practice and Procedure: Evidence* § 5209.

Here, a slew of exhibits offered by plaintiff warrant exclusion because they bear no relevance to the elements of the remaining claims. As stated previously, to prevail under a hostile work environment claim, a plaintiff must show:

(1)   that the employee belongs to a protected class;
(2)   that the employee was subject to unwelcome harassment;
(3)   that harassment was based on her membership in the protected class;
(4)   that the harassment affected a term, condition,
        or privilege of her employment, and
(5)   that the employer knew or should have known of
        the harassment and failed to take prompt remedial action.

*Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 858–59 (SD Tex. 2010) (citing *EEOC v. WC & M Enterprises, Inc.,* 496 F.3d 393, 399 (5th Cir.2007)).

And to prevail on a hostile work environment claim, a plaintiff must show that:

>   (1) the employee engaged in an activity that Title VII protects;
>   (2) the employer took adverse employment action against the employee; and
>   (3) there is a causal connection between the protected activity and the adverse employment action.
>
> *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 862 (SD Tex. 2010)(citing *Brazoria County, Tex. v. EEOC,* 391 F.3d 685, 692 (5th Cir.2004)).

The following exhibits warrant exclusion because they make no element of either the hostile work environment claim or the retaliation claim more or less likely. Even if these exhibits were found marginally relevant to the plaintiff's hostile work environment and retaliation claims - which they are not - the weight of that relevance should be minimal in comparison to the danger of unfair prejudice to the LSU Board, the wasteful presentation of needless evidence, and the potential to mislead or confuse a jury. *See Fed. R. Evid. 403*.

Plaintiff's Exhibit 42 depicts an email exchange between Plaintiff and Dr. Peter DeBlieux, one of plaintiff's former mentors. In the email exchange, plaintiff alleges that Dr. Salvador Suau, Plaintiff's former program director, has disclosed the details of plaintiff's therapy with the Campus Assistance Program ("CAP"). He believed that Dr. Suau revealed this information because other people seemed to "have full details about this CAP issue." Not only is this allegation unfounded, but even if the allegation were true, it is nevertheless irrelevant because this alleged disclosure of private information bears no relation to plaintiff's membership in a protected class, thus it cannot be considered for purposes of plaintiff's hostile work environment claim. For example, the United States Court of Appeals for the Fifth Circuit in *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652 (5th Cir. 2012) affirmed summary judgment for a defendant when the plaintiff could not demonstrate that the conduct he faced was based on their membership in a protected class. In *Hernandez*, a Hispanic plaintiff brought suit against his employer under a hostile work environment theory, alleging that the threats and derogatory comments he faced rendered his place

9

of work a racially hostile work environment. Although the Court noted that the record revealed: "a workplace that could be quite mean-spirited, crude, and insulting," the Court nevertheless affirmed summary judgment for the defendant –*among other things* – because "there was no evidence that the actions [of the employers] were based on race." Here, as in *Hernandez*, even if the allegation described in Plaintiff's Exhibit 42 transpired, it is immaterial to plaintiff's hostile work environment claim absent a showing that The LSU Board disclosed plaintiff's CAP details on account of plaintiff's membership in the Jewish faith.

Likewise, the alleged incident is not relevant to plaintiff's retaliation claim because there has been no showing that this disclosure constituted an "adverse employment action" or that the incident bore "a causal connection between the protected activity and the adverse employment action."[1] Thus, Plaintiff's Exhibit 42 warrants exclusion.

Plaintiff's Exhibit 65 warrants exclusion for the same reasons. This exhibit features an email chain between plaintiff and an LSU ombudsman wherein plaintiff states that Dr. Suau was "abusive and threatening" towards plaintiff because he would not allow him to use his cell phone or laptop computer while on shift. However, as with Plaintiff's Exhibit 42, there has been no showing whatsoever that this "abusive and threatening" behavior was predicated on plaintiff's membership in a protected class, nor is there any indication that Dr. Suau's choice to forbid Plaintiff from using his cellphone or laptop on shift amounted to an adverse employment action for purposes of Title VII. Thus, the alleged incident described in Plaintiff's Exhibit 65 is irrelevant to plaintiff's hostile work environment and retaliation claims and should not be considered at the trial of this matter.

---

1 *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010)(citing *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir.2004)).

Similar relevancy issues exist for Plaintiff's Exhibit 49. This Exhibit depicts an email exchange between Plaintiff and Dr. Keith Van Meter. In the discussion, plaintiff is looking to set up a meeting with Dr. Van Meter to discuss how Dr. Salvador Suau was "really threatening my personal life. He has said some untrue statements regarding our outpatient [sic] interaction to [the Campus Assistance Program] and the Louisiana PHP, which is putting my professional career in jeopardy." As with the previous exhibits, there is nothing in this email exchange to indicate that the alleged behavior was predicated on Greenberg's membership in a protected class, nor is there any indication that the alleged "untrue statements" constituted an adverse employment action causally linked to plaintiff's choice to engage in activity that Title VII protects. Thus, Exhibit 49 has no probative value on the subject action and should be excluded from the trial of this matter.

Similarly, Plaintiff's Exhibit 57 warrants exclusion. In this email, Plaintiff emails Dr. Peter DeBlieux to complain about Dr. Suau. Specifically, he complains that Dr. Suau has not sent him a "formal [remediation] guideline or expectation in written form," further complaining that Dr. Suau reprimanded him for "tapping on my computer too loudly and being disruptive during [an] exam." Plaintiff expresses concern that this typing incident is causing his workplace to "rapidly becom[e] a hostile work environment." Plaintiff's Exhibit 57 warrants exclusion for two reasons. First, the allegations are irrelevant to the remaining causes of action. As with the prior exhibits described in this section, there has been no indication that either Dr. Suau's alleged failure to give feedback or his choice to reprimand plaintiff for loud typing was predicated on plaintiff's membership in a protected class. Nor is there any indication that these alleged actions constituted adverse employment actions done to punish plaintiff for engaging in activity protected by Title VII. Second, plaintiff's characterization of his workplace as a "hostile work environment" should be excluded because they may confuse a jury. As iterated above, a plaintiff must meet exact criteria

to prove a hostile work environment claim. Upon reading the plaintiff's description of a "hostile work environment" in this Exhibit, a juror may be confused into thinking that plaintiff is describing a work environment that meets the five (5) criteria for a hostile work environment claim under Title VII.

[2] This potential for confusion, compounded by the fact that the allegations in Plaintiff's Exhibit 57 are irrelevant to the remaining causes of action, warrants the exclusion of Plaintiff's Exhibit 57. *See Fed. R. Evid. 403* (providing for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [the likelihood of] misleading the jury."); *Torres-Arroyo v. Rullan*, 436 F.3d 1, 8 (1st Cir. 2006) (citing *Faigin v. Kelly,* 184 F.3d 67, 80 (1st Cir.1999)). ("District courts have the right—indeed, the obligation—to guard against juror confusion in such circumstances.")

Likewise, Plaintiff's Exhibit 59 warrants exclusion. Plaintiff's Exhibit 59 depicts an email exchange between plaintiff and a Campus Assistance Program employee, Scott Embley, wherein plaintiff complains that he has not received a "remediation roadmap" from Dr. Suau. Dr. Suau has criticized the plaintiff's decision to discuss "harassment" with Dr. DeBlieux. That plaintiff finds it challenging to speak to Dr. Suau "without fear of punishment or retribution." As with the earlier Exhibits, Plaintiff's Exhibit 59 fails to articulate a causal link between the purported "harassment"

---

22 To prevail under a hostile work environment claim, a plaintiff must show:

(1) that the employee belongs to a protected class;
(2) that the employee was subject to unwelcome harassment;
(3) that harassment was based on her membership in the protected class;
(4) that the harassment affected a term, condition, or privilege of her employment, and
(5) that the employer knew or should have known of
the harassment and failed to take prompt remedial action.

*Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 858–59 (S.D. Tex. 2010) (citing *E.E.O.C. v. WC & M Enterprises, Inc.,* 496 F.3d 393, 399 (5th Cir.2007)).

and plaintiff's membership in a protected class, and although plaintiff mentions that he fears punishment or retribution, there is no showing that this punishment or retribution would be coming in response to plaintiff engaging in some type of activity protected by Title VII. Thus, Plaintiff's Exhibit 59 warrants exclusion. Plaintiff's Exhibit 60 should be excluded for the same reason, as Plaintiff's Exhibit 60 features the same email chain as Plaintiff's Exhibit 59, but forwarded to Dr. Peter DeBlieux.

### V. Plaintiff's "Timeline" Exhibit and "Suau Quotes" Includes Inaccurate Summaries and Factual Misrepresentations that Warrant Exclusion.

Plaintiff's "Timeline" exhibit and "Suau Quotes" exhibit include factual misrepresentations and inaccurate summaries that warrant exclusions. For instance, Plaintiff claims that Dr. Suau made the following quote on February 14, 2017, "You have no graduation date, I can keep you here for 6 months, 18 months, 5 years even, if I want to." However, there is no evidence that this quote came from Dr. Suau; instead, Plaintiff's Exhibit 53 shows that the origin of this quote in an email that the plaintiff wrote, to himself, purportedly as a note from an earlier conversation with Dr. Suau. Because this quote is attributed to Dr. Suau when in reality, it was pulled directly from an email that the plaintiff typed and sent to himself, it should be stricken as a misrepresentation.

The LSU Board also objects to the entry on plaintiff's "Timeline" demonstrative wherein plaintiff alleges that on September 3, 2016, that a "Clinical patient need[ed] central line. No lidocaine in central lidocaine kit." However, the medical records about this incident make no mention that this kit lacked lidocaine. As such, the LSU Board requests that this entry either be stricken or amended to read "Clinical patient needs central line. Plaintiff alleges that no lidocaine was in the central line kit."

Plaintiff's "Timeline" also includes a factual misrepresentation concerning his time with the Campus Assistance Program, or as plaintiff described it in his "Timeline," the "Treatment

Program." Although he claims that his time with the Treatment Program spanned from October 2016, to November 2016, he was treated from October 2016, to January 2017. *See* Joint Exhibit 34 (a Campus Assistance Program Fitness for Duty Letter, dated January 2017).  Thus, the LSU Board requests that Plaintiff's "Timeline" be amended to reflect his time in the Treatment Program accurately.

Likewise, the LSU Board requests that a January 13, 2017, entry on Plaintiff's "Timeline" be changed to be more factually accurate. Plaintiff maintains that Dr. Suau received a letter notifying him that Plaintiff "has successfully completed his primary treatments." True, Dr. Suau did receive a letter to this effect. Still, the letter set forth eight (8) recommendations regarding plaintiff's return to work, including recommendations that he completes a "Program for Distressed Physicians" and be precluded from moonlighting. The LSU Board respectfully requests that this timeline entry be amended to reflect that plaintiff's "completion" of treatment came subject to these recommendations.

In a similar vein, a June 29, 2016, entry states that Dr. Suau sent plaintiff an email notifying him that Plaintiff "has completed most of the requirements of his academic probation." True, plaintiff did receive a letter to this effect; however, the letter also made abundantly clear that "any non-cognitive lapses in professional value, accountability, and lack of patient-centered communication skill necessary to being portrayed as compassionate, respectful, accountable, and responsive clinician, would lead to immediate dismissal." The LSU Board respectfully requests that this Timeline entry include this quoted language to provide a complete context of the June 29, 2016, letter.

Also, on the Timeline Exhibit, Plaintiff lists an entry in April of 2016, wherein "10 different doctors gave Plaintiff positive feedback". True, plaintiff did receive positive feedback at this time,

14

but the LSU Board object to this entry to the extent that it categorizes plaintiff's feedback as wholly positive. In fact, in April of 2016, Plaintiff's feedback still identifies multiple areas as "Needs Improvement," including areas of professionalism and explaining pathology. *See, e.g.,* Defendant's Exhibit C: LSU_HR-DEPT_GREENBERG's RESIDENCY FILE 000534.

## VI. Specific Exhibits Depicting Text Messages Warrant Exclusion because they do not Contain Sufficient Information for Authentication Purposes.

The LSU Board objects to a series of text messages that plaintiff seeks to add as exhibits, as these text messages cannot be adequately authenticated under Federal Rule of Evidence 901. To properly authenticate an exhibit, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Fed. R. Evid. 901*. The text of FRE 901 does not include a special provision for text messages. Still, it does set forth a rule for telephone calls, which are analogous, reading "For a telephone conversation, evidence that a call was made **to the number assigned** at the time to a particular person, if circumstances, including self-identification, show that the person answering was the one called." (emphasis added).

Here, some of the text messages that the plaintiff seeks to introduce warrant exclusion because the plaintiff cannot show that the texts were made to a specific cell phone number. Specifically, Plaintiff's Exhibits 90, 91, 98, 104, and 106 are screenshots of text exchanges, but the screenshots do not depict the cell phone number for whoever plaintiff was texting. As such, it would be impossible for a proponent of these screenshots to ascertain what number or recipient these text messages were sent to. Accordingly, these text messages cannot be properly authenticated.

Thus, for the reasons cited above in relation to Plaintiff's Demonstrative Exhibit and Exhibits listed in the Pre-Trial Order as objectionable to the LSU Board, The Board of Supervisors lf Louisiana State University and Agricultural and Mechanical College, respectfully requests that this Court sustain its objections to the foregoing Exhibits.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

*/s/ Denman T. Mims*
**KEITH W. MCDANIEL, TA** (Bar No. 17992)
**JULIANNE T. ECHOLS** ( Bar No. 22044)
**DENMAN MIMS** (Bar No. 38840)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDaniel, & WELCH, LLC
195 Greenbriar Boulevard, Suite 200
Covington, LA   70433
Tele:   (504) 831-0946 | F:   (800) 977-8810
**Attorneys for The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2021, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all counsel by operation of the Court's electronic filing system.

*/s/ Denman T. Mims*
**DENMAN T. MIMS**